WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Sandeep Singh,

               Petitioner,

v.

John E Cantu, et al.,

               Respondents.

No. CV-26-00872-PHX-MTL (JZB)

**ORDER**

Petitioner, a citizen of India, filed an Amended Petition for Writ of Habeas Corpus (Doc. 14)[1] challenging his immigration detention. Petitioner argues that he must be released from custody because he was previously released on conditional parole and then re-detained without being provided with a prior hearing and because no statutory basis exists authorizing his detention. For the following reasons, the Court denies the Amended Petition.

**I.**

Petitioner is a native and citizen of India detained in immigration custody in Eloy, Arizona. (Doc. 14 ¶ 16.) He "entered the United States without inspection on April 12, 2023" and was then "arrested by Customs Border Protection inside the United States" the next day (*Id.* at 14 ¶¶ 54-55; Doc. 2 at 8.) Petitioner was "released on his own recognizance under [8 U.S.C. §] 1226(a)(B)(2) (conditional parole)." (Doc. 14 ¶ 57.) He was also issued

---

[1] Petitioner's initial Petition was dismissed because Petitioner failed to name his immediate custodian as a respondent. (*See* Doc. 13.) The parties have largely rested on their briefing to the initial Petition, so the Court considers the parties' previous briefing in resolving the Amended Petition. (*See* Docs. 16, 17.)

a Notice to Appear and placed in removal proceedings. (*See id.* ¶ 60; Doc. 2 at 8-10.) Petitioner later applied for asylum and was approved for temporary work authorization. (Doc. 14 ¶¶ 61-62; Doc. 2 at 12-23.)[2]

On December 16, 2025, Petitioner was re-detained. (Doc. 14 ¶ 63.) He was not provided with a hearing before being re-detained "or notice of the basis for his detention." (*Id.* ¶ 65.) Petitioner argues that his re-detention without a change in circumstances, notice of the basis for the re-detention, or a prior hearing violates the Due Process Clause of the Fifth Amendment. (*See id.* at 16-18.) Petitioner also argues that his detention is not authorized by the Immigration and Nationality Act ("INA"). (*Id.* at 18-19.)

**II.**

Respondents argue that Petitioner is properly classified under § 1225 and that, because Petitioner was not deemed to have made an "entry" into the United States, he is not entitled to any process under the Constitution beyond what the INA provides. (*See* Doc. 10.) They also argue that because Petitioner was subject to § 1225 when he arrived in the United States, he could not have been paroled under § 1226 but, rather, only under 8 U.S.C. § 1182(d)(5), which is the sole authority for parole of individuals subject to § 1225. (*Id.*) Further, even if Petitioner were paroled under § 1226, he would not be entitled to release or a bond hearing. (*Id.*) The Court agrees that Petitioner was not entitled to a hearing before being re-detained and that Petitioner's detention is statutorily authorized.

**A.**

The Due Process Clause did not entitle Petitioner to a hearing or additional process beyond what the INA requires before being re-detained. The Court need not decide whether Petitioner was paroled under § 1226 or under § 1182(d)(5) because, under either provision, the Due Process Clause does not offer additional process to Petitioner before he was re-detained.

The Ninth Circuit has explained that there is "no substantive liberty or property interest . . . in temporary parole status." *Wong v. United States*, 373 F.3d 952, 968 (9th Cir.

---

[2] Petitioner has since been denied relief, although his appeal to the Board of Immigration Appeals remains pending. (Doc. 14 ¶¶ 70-72.)

2004), *abrogated on other grounds as stated in Pettibone v. Russell*, 59 F.4th 449, 452-53 (9th Cir. 2023). "The INA does not create any liberty interest in temporary parole that is protected by the Fifth Amendment," but instead "makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.* And as the Supreme Court has explained, the "procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). For example, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* By its own terms, parole under § 1182(d)(5) is such a benefit that may be granted or denied in the discretion of the Secretary of Homeland Security. The same is true of conditional parole under § 1226 because it expressly provides that, although an alien *may* be released on conditional parole, the "Attorney General *at any time* may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(a)(2), (b) (emphasis added). Petitioner therefore lacks any interest in maintaining his parole that is protected by the Due Process Clause and that would require the government to provide him with a hearing or additional process beyond what the INA requires before terminating parole and re-detaining him.

Further, the Supreme Court has rejected that an alien who successfully but illegally steps onto United States soil before being caught is entitled to due process rights beyond the "rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020). The Supreme Court reasoned that to hold otherwise would "disregard[] the reason for [the] century-old rule regarding the due process rights of an alien seeking initial entry," which "rests on fundamental propositions" that the "power to admit or exclude aliens is a sovereign prerogative" and includes the power to "set the procedures to be followed in determining whether an alien should be admitted." *Id.* at 139 (citation omitted). This foundational principle "would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil," so an alien "who is detained shortly after unlawful entry cannot be said to have effected an entry." *Id.* at 139-

40 (quotation marks omitted). If it were not so, there would be "a perverse incentive to enter at an unlawful rather than a lawful location." *Id.* at 140. The Supreme Court noted that, for aliens who enter at a lawful location like a port of entry, they are "treated for due process purposes as if stopped at the border," "*even those paroled elsewhere in the country for years pending removal.*" *Id.* at 139 (emphasis added) (quotation marks omitted).

The Court therefore rejects Petitioner's argument that he is entitled to additional process under the Constitution merely because he successfully entered the United States before being apprehended and then discretionarily released. (*See* Doc. 11 at 2.) The Court notes that the Supreme Court categorized aliens subject to the historical version of § 1226 as those kinds of aliens "who have come to our shores seeking admission" to whom "additional rights and privileges [are] not extended." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (observing the "carefully preserved" "distinction" in the INA between aliens subject to § 1226 and those subject to 8 U.S.C. § 1251). If the Court were to accept Petitioner's argument to the contrary, it would place Petitioner on more favorable footing than aliens who arrive in the United States at a lawful location but who are deemed to be "stopped at the border" even if subsequently paroled. *See Thuraissigiam*, 591 U.S. at 139-40 (citation omitted); *see also Leng May Ma*, 357 U.S. at 190 ("The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally within the United States is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of [the Supreme] Court." (quotation marks omitted)).

The Supreme Court has declined to "create a perverse incentive to enter at an unlawful rather than a lawful location," *Thuraissigiam*, 591 U.S. at 140, and the Court will not do so here. *See Leng May Ma*, 357 U.S. at 189 ("The appellant could not lawfully have landed in the United States * * *, and until she legally landed could not have dwelt within the United States. . . . When her prison bounds were enlarged by committing her to the custody of [a private Immigrant Aid Society], the nature of her stay within the territory was

not changed. She was still in theory of law at the boundary line and had gained no foothold in the United State[s]." (first alteration in original) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925))). Because Petitioner is "not considered to have entered the country," he has "only those rights regarding admission that Congress has provided by statute," and the "Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 139-40. And as the Supreme Court has long held, in these circumstances "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Id.* at 138 (emphasis added) (citation omitted). Petitioner was not entitled to anything beyond the process provided him under the INA before being re-detained. *See Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("[T]he due process rights of noncitizens who have not effected an entry into the country are coextensive with the statutory rights Congress provides." (quotation marks omitted)); *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (rejecting that an alien's "constitutional right to procedural due process" was violated because the alien "never formally entered the United States" and thus "ha[d] no such right"). Petitioner does not argue that the INA provided him with the additional process he claims he should have been given before being re-detained (*see* Doc. 14 ¶ 33), and because the Due Process Clause does not provide anything more, his due process claims are denied.

**B.**

Petitioner's third claim asserts that there was no statutory basis to detain him because he was "previously arrested and released under § 1226" and thus could not be detained under § 1225(b). (*Id.* at 18.) He concludes that "[n]o statutory authority exists for Respondents to continue detaining" him under § 1225. (*Id.* at 18-19.) Even assuming Petitioner were correct that he could not be detained under § 1225 because he was previously released under § 1226, Petitioner is incorrect that no statutory basis for his detention exists. As explained above, even an alien released under § 1226 may "*at any time*" have their "bond or parole authorized under subsection (a)" revoked, be "rearrest[ed] . . . under the original warrant, and detain[ed]." 8 U.S.C. § 1226(b) (emphasis

- 5 -

added). Section 1226 thus authorizes detention of aliens previously released, and Petitioner's claim to the contrary is denied.

### III.

Accordingly,

**IT IS ORDERED** that the Amended Petition (Doc. 14) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly and close this case.

Dated this 15th day of July, 2026.

Michael T. Liburdi
United States District Judge